IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PITTSBURGH MACK SALES & SERVICE, INC., d/b/a/ PITTSBURGH TRUCK CENTER,<br>        Plaintiff,<br><br>v.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 66,<br>        Defendant. | Civil Action No. 07-0092<br>Judge Gary L. Lancaster<br>Magistrate Judge Lisa Pupo Lenihan |

## **MEMORANDUM ORDER**

Plaintiff's Complaint was received by the Clerk of Court and was subsequently referred to United States Magistrate Judge Lisa Lenihan for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrate Judges.

The Report and Recommendation (the "R&R") concluded that, because Plaintiff Employer cannot maintain a declaratory judgment action for indemnification by its employees' Union of its withdrawal liability to the Pension Fund under the provisions of its collective bargaining agreements (the "CBAs"), Defendant's Motion to Dismiss should be granted. See

R&R at 13-14 (concluding that employees' assumption of the employer's liability for Congressionally-mandated pension withdrawal contributions (amounting to a waiver of the employer's liability) was "precluded" by the public policy legislation of ERISA and the MPPAA).[1]

Lengthy and strenuous objections to the R&R were filed, as was a lengthy Response to the Objections and, thereafter Plaintiff's further Reply. After review of the pleadings and documents in the case, together with the R&R, the Court observes as follows:

First, Plaintiff is mistaken in its assertion that ERISA and/or the MPPAA cannot preempt its action for indemnification brought under § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. See Plaintiff's Objections to Magistrate's Report and Recommendation at 6-7. The cases cited are *fundamentally* distinguishable, holding merely that ERISA's remedial scheme does not preempt enforcement actions under the LMRA.[2] These cases do not hold that private contractual arrangements which conflict with the substantive provisions

---

1. See also Connolly v. Pension Benefit Guaranty Corporation, 475 U.S. 211 (1986)( holding that MPPAA's imposition of employer's withdrawal liability could not be defeated by collective bargaining agreement limitations on the employer's pension fund liabilities); id. at 224 (concluding that Congress had justly "nullified contractual provisions limiting liability by imposing an additional obligation otherwise within its power to impose, *i.e.*, statutory withdrawal liability redounding to the benefit of pension trusts); id. at 225 (observing that the Act's "safeguard[ing] of participants in multiemployer pension plans by requiring a withdrawing employer to fund its share of the plan obligations incurred during its association with the plan" and the resulting "interference with the property rights of an employer, arises from a public program that adjusts the benefits and burdens of economic life to promote the common good"); Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602 (1993); Peick v. Pension Benefit Guaranty Corp., 724 F.2d 1247 (7th Cir. 1983) (noting that "Congress has the primary task of equitably distributing the burden of underfunded pensions" and rejecting constitutional challenges to MPPAA's imposition of burden on employers).

2. See Defendant's Brief in Response at 12-14.

2

of ERISA are nevertheless enforceable whenever they are contained in a collective bargaining agreement subject to the LMRA.[3]

Second, whether dismissal of this case is couched in terms of preemption or unenforceability on public policy grounds is a matter of semantics and of no moment to the holding. The word "preemption" encompasses the overriding of that which conflicts with a Congressional pronouncement (*i.e.*, that which would obstruct the accomplishment/execution of Congress' full purposes and objectives). In this case, the controlling principle, as identified in the R&R, is that Congress' intent that withdrawal liability under the MPPAA be born by the employer, and that the employees' retirement benefits be thereby protected, may not be defeated by private contractual arrangement. And the conclusion that this action should be dismissed rests on the express legislatively-declared policy of the MPPAA and its clear articulation by the United States Supreme Court in language that binds this Court. See Connolly, *supra* n. 1; Concrete Piping, 508 U.S. 640-43 (reiterating that "private contractual provisions" cannot remove transactions from the reach of dominant constitutional power) (quoting Connolly).[4]

---

3. Cf. United Steelworkers of America v. United Engineering, Inc., 52 F.3d 1386 (6th Cir. 1995) (affirming district court's conclusion that ERISA preempted action under the LMRA).

4. See also Connolly, 475 U.S. at 227 (explaining that the "plain . . . purpose of imposing withdrawal liability was to ensure that employees would receive the benefits promised them"); Concrete Pipe, *supra* (reiterating that "primary congressional objective" of MPPAA was to "protect[] covered employees and beneficiaries of pension trusts"). Cf. 70 Corpus Juris Secundum Pensions § 180 (June 2007) ("The MPPAA is a remedial statute, which should be liberally construed in favor of protecting the participants in employee benefit plans.") (citing Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495 (3d Cir. 1992)); 29 U.S.C. § 1001 (1988) (Congressional Findings and Declaration of Policy) (stating that Congress enacted ERISA to safeguard the "continued well-being and security of millions of employees and their dependents" covered by private pension plans); Republic Industries., 718 F.2d at 639 (Fourth Circuit's holding that Congress's requirement that "employers
(continued...)

Plaintiff argues, in effect, that public policy favors enforcement of its CBAs. This argument proves too much. It cannot be denied that the controlling case law explicitly forecloses enforcement of collectively-bargained limitations on pension plan contributions that would waive or preclude an employer's withdrawal liability. Plaintiff Employer seeks to distinguish its position on the ground that it is not attempting to negate or avoid payment of its Congressionally-mandated withdrawal liability, but rather is simply shifting that liability, by means of indemnification, to the Union.[5] The question before this Court is, therefore (as the R&R addressed), whether an employer's union-indemnification device is an arrangement compatible with the Congressional purpose reflected in the MPPAA (and its legislative history), and further articulated by/underlying the Supreme Court's rulings in Connolly and Concrete Pipe, or whether such device is in conflict with/outside the strictures of those authorities.

---

4. (...continued)
who received the full benefit of employees' services bear the cost" of unfunded pension liability, *"rather than the employees* who provided their services on the actual or implied promise that they would ultimately enjoy their vested, accrued pension benefits" was equitable and rational response to problem of how to protect financial stability of multiemployer pension funds) (emphasis added).

See generally R&R at 13 ("In sum, the Supreme Court has held that withdrawal liability under the MPPAA, which has the express *purpose* of imposing on an employer its share of responsibility for unfunded vested benefits, is imposed upon the employer as a condition of its participation in a federally-regulated multiemployer pension plan and cannot be defeated by private contractual provisions.") (citations omitted); id. at 13-14("Plaintiff's requests in this action are tantamount to an attempt to defeat Congressional purpose because the interpretation of the indemnification language it urges would transfer an obligation expressly imposed upon the employer onto the very employees/pension plan beneficiaries the MPPAA was enacted to protect.").

5. See Plaintiff's Objections at 8-9 (asserting that Plaintiff "does not seek to transfer, avoid or contest" its withdrawal liability, but only to "enforce the Union's collectively-bargained obligation to indemnify it").

4

The Report concluded that enforcement of a union indemnification was "precluded as indistinguishable in effect from other attempted limitations on withdrawal liability, . . . repeatedly held to be ineffective." R&R at 14. And that "a potential retirement benefit loss . . . may not be transferred by private contract from the Employer (upon whom Congress has decreed the responsibility should rest) to the employees (for whose protection the legislation was enacted)." Id. at 15. This Court concurs.[6]

Third, Plaintiff objects that the R&R's liability-funding premise (*i.e.*, that a union indemnification of an employer's withdrawal liability would shift that funding burden to the employees) amounts to an improper finding of fact against the non-moving party. See Plaintiff's

---

6. See R&R at 15, n. 17 (citing Local 1035, Internat'l Brotherhd. of Teamsters v. Pepsi Allied Bottlers, Inc., 99 F.Supp.2d 219 (D.C. Conn. 2000) (holding that union's collective bargaining agreement indemnification of employer's FLSA overtime liability violated that statute's public policy because enforcement would result in employees funding their own overtime); id. (concluding that union could not "bargain[] away employee's rights granted to them under" statute enacted to provide guaranteed standard); Stamford Bd. of Educ. v. Stamford Educ. Assoc., 697 F.2d 70 (2d Cir. 1982) (holding that collective bargaining agreement indemnification for sexual discrimination violated federal civil rights policy and was void); id. at 73 (noting that enforcement of the "hold harmless" provision would remove incentive legislation intended to create, and would probably require union dues to be utilized to satisfy a discrimination judgment against the employer); id. (concluding that "courts must not be timid in voiding agreements which tend to injure the public good or contravene some established interest of society")). Compare Plaintiff's Objections at 10 (asserting that the R&R's extension of the financial burden of union indemnification to its member employees was "without meaningful analysis or citation to legal authority").

5

Objections at 12-13. The R&R does not, however, make a finding as to the facts of the present case. Rather, it draws upon the Courts' common sense understanding of practical realities regarding economic and social interactions in assessing public policy implications. That is, it discusses "legislative facts" (*i.e.*, facts of general application) in placing its interpretation of the MPPAA and its related preclusion/ public policy analysis in a proper context. This analysis need not, and does not, reach any determination of the funding facts particular to Plaintiff's individual action. It simply reaches, by necessarily placing its analysis in an informed socio-economic context, the dispositive legal conclusion that *neither Congress nor the Supreme Court would find an employer's avoidance of withdrawal liability by union indemnification meaningfully different, from the employee's perspective, from avoidance by means of other, expressly-prohibited contractual limitations.*[7]

---

7. The Court notes that, Plaintiff's citation to it notwithstanding, United States v. White, 322 U.S. 694 (1994) is entirely inapposite.

The Court further notes that Plaintiff contends that, in this case, significant Union assets come from sources other than dues (*e.g.*, investment income), so that an imposition of withdrawal liability upon the Union need not be paid from the employees' pockets. As discussed above, no determination of the individual facts is necessary to or encompassed in dismissal of this action. Even accepting the facts as Plaintiff now alleges, however, Plaintiff acknowledges that something less than one-half of the Union's 2006 income came from member dues/fees, and there is no indication in its 36-page Exhibit to the Objections that any other source of revenue (*i.e.*: "rents, dividends, interest, fes, fines, assessments, work permits") could be readily expanded to cover an additional $420,000 of liability (*i.e.*, that anything other than employee dues is flexible). And, as the Union observes in its Response, most - if not all - of its non-dues income derives from investments that in turn derived from employee dues. There is, therefore, no reason to suppose that this case would fall outside the ambit of the ordinary employer-union-employee economic relations contemplated in the Report's preclusion/public policy analysis.

Fourth and finally, Plaintiff also objects to the R&R's improper fact finding with regard to the Union's allegedly voluntary acquiescence in the replacement of its collective bargaining agreements as part of the asset sale. See Plaintiff's Objections at 14. Suffice it to say that the Report's descriptive characterization of the factual circumstances is just that - a descriptive summation - and that its particulars were not material to its recommendation. In addition, the R&R's recitation of facts with a point of view that Plaintiff finds objectionable appears to have been in response to Plaintiff's overly-zealous characterization of its position. In particular, the Court notes that Plaintiff continues to insist that the incurrence of withdrawal liability was a product of an entirely voluntary decision by the Union and, in so doing, Plaintiff truncates its quotation from its asset sale agreement to omit the express condition of that transaction on the formation of a new collective bargaining agreement without retirement benefit contributions. See Plaintiff's Objections at 4. Similarly, although Plaintiff asserts that the CBAs' general successor clause would bind the asset purchaser, it is by no means clear that it would have that effect.[8] At bottom, however, these characterizations of what brought about this employer's withdrawal liability are not material to this Court's decision in light of "[t]he legislative purposes clearly articulated in federal pension law, and recognized in broad [and binding] pronouncements of the Supreme Court." R&R at 14.

---

8. See Plaintiff's Objections at 3, n. 1.

7

The Court accordingly orders that:

NOW, this 28th day of September, 2007:

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss be granted for the reasons aforesaid.

IT IS FURTHER ORDERED that the Report and Recommendation of Magistrate Judge Lenihan is adopted as the Opinion of the Court.

_____
Gary L. Lancaster
United States District Judge

Dated: September ___, 2007

cc:  All Counsel of Record